Robert Lundberg v. the Secretary of the Florida Department of Corrections. Mr. Moss. And Mr. Moss before I sometimes forget to do this so I'll do it now. I know that your court appointed for Mr. Lundberg and we want to thank you for your service not only to him but to the court as well. We really do appreciate it. Thank you, Your Honor. May it please the court, Tony Moss on behalf of Robert Lundberg, the appellant in this case. Judge Walker, good to have you back. You were on my last panel here I believe last year so good to have you again. Good to see you. All right. This is a an appeal of the district court's denial of relief of Mr. Lundberg's 28 U.S.C. 2254 petition alleging that the state courts of assistance of counsel in his particular case as will be explained shortly. Now in this case as is typical in a 2254 that gets to this level of appeal, there are three questions that must be addressed. The first one, the threshold question, is whether trial counsel was in fact deficient under Strickland v. Washington. Second, did the state court in this particular case apply the claim in an unreasonable manner given the facts? Which leads to the ultimate question, the one that appears at the head of the claim. Did the district court err in finding that the state's court's ruling was appropriate? You've got a number of ineffectiveness claims and you may not have time to get to all of them. Which ones do you want to concentrate on? I'm going to concentrate on claim two, Your Honor. Okay, which is a failure to object to the trial court's giving of an instruction on attempted sexual battery when allegedly there was no... Not that one. No, claim two is the one in which Mr. Lundberg alleges that the... Oh, the statement to the girlfriend. Correct. Okay, got it. That's the one I want to zero in on. Okay, thank you. Okay, and I'll answer the second question first. In doing so, I will fill out the reasons why the answer to the first question is yes. All right. It's our contention that the 4th DCA, 4th District Court of Appeals, applied Strickland in an unreasonable manner to the facts of this case for the following three reasons. Number one, the case law that was cited by the defense, which the 4th DCA distinguished on its facts. The court read the holdings in those cases too narrowly. That's one issue. The second is that there was no record evidence as to whether the failure of trial counsel to file this motion was strategically based after reasonable investigation. And the third issue is that the one case in particular that the state relied on or the trial the 4th DCA relied on in denying relief is factually distinguishable from what happened in Lundberg. Are you making the argument about the expectation of privacy here? Correct. Okay, and not the one about the fruit of the poisonous tree from the earlier statement? No, I'm addressing the privacy issue. I may refer at some point to facts that were alleged as to Claim 1, but the focus will be on the privacy issue. On the privacy, didn't the district judge make a finding here that was a little different from your argument in the sense that the statement I'd like to leave you to, by the officer who left, Dennis. Okay, say that again, I want to make sure I'm following you. So Dennis, Officer Dennis, left the room and turned off the audio, the tape recorder. Right. There was a video on that kept running. Correct. And then she said, I want to leave you to your, give you some privacy. I'm going to give you all some privacy. Give you some privacy. That's a kind of a factual question about what that meant, and didn't the district judge address that, and the state court judge address it as well, and the state court came to the conclusion, the state habeas court came to the conclusion that it was just, I'm going to leave you alone, and there was no, this was a interrogation room, which normally is not, there's no expectation of privacy, but that an expectation of privacy wasn't created under the circumstances, and that those cases which have addressed this question and found an exception to the normal idea that a room like this is open and there is no expectation of privacy, those cases actually turned on whether or not the person was getting around his, the state was getting around the warnings that had been given, and the guy had refused basically to talk with the police present, but then they did it. I presume you're talking about the Cox and the Calhoun cases. That's right, Cox and the Calhoun cases. Correct. All right, so this case is different from those. Well, in that, in a sense that you're describing, your honor, you're absolutely correct. Where I argue that the fourth DCA read those determining factors, the fourth DCA described it, was whether the police action was designed to circumvent some exercise of a constitutional right. None of the cases that the fourth DCA relied on make that point explicitly. I want to especially draw the court's attention to the language in Allen v. State, which is the only Florida Supreme Court pronouncement on the issue. Allen said that, and I'm paraphrasing, that a potential suppression issue might arise if the police took some kind of deliberate effort, especially when the obvious objective was to circumvent a constitutional right. It did not say that that exception applied exclusively to a situation in which there was, there had been an exercise of a constitutional right. Allen does not make that distinction. We'll leave... But just going back to Judge Walker's question, are you arguing that that was an unreasonable determination of fact when the State Habeas Court interpreted the statement by Officer Dennis? I would argue that that... Let me make sure I understand your question, judge. Would you ask it again? So Judge Walker was pointing out that the State Habeas Court made a  statement, I'll leave you alone, not you will be in a private situation. So do you accept that finding a fact, or are you arguing that that's an unreasonable determination of fact so that... I'm arguing that that's an unreasonable determination, which brings me to the Boyer case, which the court relied on almost exclusively in support of its proposition that there was a, that there was no right of privacy. Boyer involved a case that was similar to this one in one specific aspect, and that is that in each, in that case, as well as here, the defendants had voluntarily waived their Miranda rights. In Mr. Lundberg's case, it was at the outset of the interrogation. In Mr. Boyer's case, it was midway through after he had initially invoked his right to silence. So the two cases are similar in that regard. Here's where they differ. Unlike in Lundberg's, Mr. Hostetler and Boyer never uttered the express word privacy. He did say, I'm going to go out, I'm going to let y'all talk for a while, but the express word privacy was never uttered. Also, unlike the Lundberg case, there was no action described on the part of the police that would have furthered Mr. Boyer's expectation of privacy. Here there was. The fact that Detective Dennis had an audio recorder on the table during the interview certainly would disabuse Mr. Lundberg of any notion that he had a right to privacy there. We agree with that. But once he saw Detective Dennis turn off the tape recorder, heard her say that she was going to turn it off, and then made the express grant of privacy, that is a significant difference from Boyer. Assuming that the attorneys should have had enough to at least file a motion to suppress, on the prejudice side of the Strickland equation, what is the best case you have to suggest that he might have had a shot at being successful had he filed a suppression motion? Okay, well obviously we can never guarantee what the ruling would . . . No, and I'm not asking for a guarantee, and that's not the best ones for your position that suggest that that motion to suppress would have had a chance of succeeding. Because you have to show at least some indicia that that motion to suppress would have been a viable option, would have had some chance of success, right? That's what the Strickland . . . In other words, if every single case in the country, you know, from all fifty states and all courts of appeal, had said in your particular factual situation, the defendant loses that expectation of privacy, doesn't give rise to a valid suppression claim, you'd lose on Strickland prejudice, right? Because you couldn't show that there is any likelihood of a different outcome. Well, here's what I would argue with regard to that. Had the motion been granted, then the most substantial piece of corroborating evidence in support of the victim's accusations would have been off the table. Remember? Agreed, yes, sure. So at that point, the defense would not have been the one that trial counsel originally adopted, the one which opened up the door to the hearsay testimony. It would have . . . He could have basically argued insufficiency of the evidence because of lack of corroboration, or at the very least, at worst, he would have had a potential issue for direct appeal in state court. Your point, I guess, is that this Figueroa girlfriend was the only corroborating evidence apart from the victim? Apart from the victim's accusations and the statements by . . . the statements elicited by her parents. Because . . . and that's because the statements that Mr. Lundberg himself made were thrown out. The statements that he . . . the admission that he made to the detective after she made that death penalty remark, those were suppressed. Right, so the quantum of evidence that the jury considered didn't include those. Those were out of the picture. Correct, but without . . . what had that issue been litigated and had the motion been granted, then the state's case would have been that much weakened to the point where there is a reasonable chance that the . . . Other statements that were made by the testimony of the parents and also of presumably, I think it was hearsay, of the consultant that they brought in, that was all pretty powerful corroboration. I know it was allowed in and there was a strategy that the defense counsel argues in connection with those that because there were . . . the parents had some question about her . . . the victim's veracity, that he let all that in and if that gets in and is not challenged on habeas and is accepted into the case, then it seems to me there's a pretty . . . it's . . . the additional statement to the girlfriend loses a lot of its force. Well, I had . . . In terms of prejudice. Okay, I understand the court's position and I believe as your court is aware, one of the issues that was raised that I'm not focusing on was in Claim 10 with regard to some of that various hearsay testimony that Your Honor is referring to, specifically the references to the psychologist that the family had taken to and there was one other hearsay witness, I believe Detective Dennis, that was a separate issue, but you are correct that even if you . . . They become relevant on the prejudice prong of the argument, of the point that you're making. Okay, Mr. Moss, thank you. We'll give you your full time for rebuttal. All right, thank you. Whenever you need to do it, just do it. Ms. Jermanowicz. Good morning, ma'am. We want to thank Ms. Atkinson for being here and giving us her assistance as well, whenever you're ready. Thank you very much. Good morning. May I please the court, my name is Janine Jermanowicz. I'm here today to represent the Florida Department of Corrections in this matter. Of course, it's our position that the defendant is not entitled to any relief. It's very helpful to start with the standard that is applied to these kind of issues and it is a very, very, very high standard that we have to meet. Not only do you have to meet the Strickland standard, you have to meet the AEDPA standard. Of course, it is a doubly deferential standard that we need to meet. Only on performance, right? Doubly deferential only on performance, not on prejudice, right? Well, it also has to be shown that it is objectively unreasonable and not even clear error with the facts. It must be so clear that fair-minded jurors, fair-minded people would disagree, but here you have essentially seven attorneys, seven jurors who all agree that this was reasonable, this was not sufficient performance. You have the state court attorney, you have the state court trial judge, you have the three state court appellate judges, you have the federal magistrate, you have the federal district court. So under that standard, you can see that the defense is simply not able to meet that heightened standard on the sufficient performance prong. We'd also say that he's not able to meet the standard on the prejudice prong as well. In this case, the trial court ruled that there was no expectation of privacy, and the fourth GCIA agrees they cited the appropriate law from the United States Supreme Court cast, and they also pointed out that generally, there's no reasonable expectation of privacy in a police interview room. Can I ask you a question? Putting aside for a moment the very important issues of EDPA deference, if a police officer in this sort of situation tells a defendant and his or her relative, spouse, friend, etc., I'm going to turn off the tape recorder and I am going to disable the video recorder in the room so that whatever you say is private between the two of you and we can't hear it. Is there an expectation of privacy that would be violated through surreptitious recording? It's possible that it would be violated in that specific circumstance, but that's not the I just want to know what the state's position is with regards to that sort of a fact pattern. Would that create an expectation of privacy that could be violated through surreptitious recording? Well, again, it's on a case-by-case basis. I mean, it sounds like it might be a violation of privacy, but without knowing more about that particular case, I couldn't say for sure that, yes, it is a violation of privacy, but, you know, on the surface it sounds like it might be. But this is not that case. I just want to emphasize that. I have a question, and that is, who knew about the video recording? I'm assuming Dennis did. Officer Dennis knew about it, but I also am assuming that the defendant's girlfriend were unaware of that video recording. Is that correct? The defendant testified that he did not know about the recording at the hearing on this matter, but Detective Dennis testified that there were two recordings. First of all, there is this video camera that's hidden that kept continually running, and Detective Dennis testified that it was always kept running, specifically for officer safety purposes, and you just monitor that. And then the second videotape, which is the audio recording, which was on the table in front of Detective Dennis, the defendant, she said that she kept, she made that specific recording as a backup in case the audio portion of the hidden videotape failed. So that's what she testified to. But she did testify also that she only permitted the defendant to see the girlfriend as a courtesy to the defendant, because the defendant really, really wanted to see the girlfriend, and he wanted to talk to her. He wanted to tell her that he'd been arrested. He wanted to tell her why he was being arrested. He wanted to apologize and seek her forgiveness. And Detective Dennis says, well, okay, I'm going to let you do that. I can't let you go out in the lobby and do this, because it's not safe, but I'll bring her in, because I'm going to be nice enough to do that, and I'm going to let you guys have privacy, just to keep you out of the public eye, so you're not telling her these distressing things in the public eye. And the 4th DCA specifically mentioned that, and I think the point is that that was an equally valid interpretation of what Detective Dennis said, what she meant when she mentioned the word privacy, and because it's an equally valid interpretation of that, you are bound to uphold the 4th DCA's ruling and funding on that point. Right, and she, to your point, Detective Dennis did not initiate the meeting between the defendant and the girlfriend. That was the defendant's idea. Is that correct? Yes. That's another point that I would like to make, obviously. Yeah. And so it isn't a situation where the police are arranging a surreptitious meeting with a hidden voice recording. No. Yeah, she was not an agent of the police at all. They didn't tell her what to ask them. They didn't tell them what to tell her. He had already made incriminating statements to the police prior to speaking to the girlfriend. He had not invoked his right to remain silent. He had not invoked his right to counsel. In the cases that the 4th DCA distinguished from this case, they specifically noted that in those cases there was an invocation of the right, and in those cases there was a deliberate attempt to bypass that by surreptitiously recording these statements after the defendant had invoked their right to counsel or right to remain silent, and so that was a big distinguishing factor. He was well aware of his private conversations previously had been recorded. He was not just making a statement to Detective Dennis. In fact, he actually expanded on it when he talked to the girlfriend. There was a suggestion here that the defendant was not simply confessing to the girlfriend because he had already made that confession to Detective Dennis. He was actually expanding on that, which indicates the genuineness of that statement. Let's see. Under these circumstances, the 4th DCA could properly rule that there was not a deliberate fostering of an expectation of privacy, that the surreptitious recording was not employed to circumvent the defendant's invocation of his right. There is no deficient representation, there is no prejudice, and under the heightened standards of the AEDPA and the W-deferential standard, the court must affirm that. Now, I'd like to briefly touch upon, if I could, the instruction on attempted sexual battery, and I just want to point something out that wasn't pointed out in the brief. Sorry? No, can I just add something? Mr. Moss didn't address that issue. If you want to address it, that's fair game, and you can, but I'm going to let him get to it on rebuttal. So if you'd like to address it, that's fine, but then I'm going to let him talk about it on rebuttal as well if he wants to. That's fine. I'm not going to make a lengthy argument about it. I just wanted to point out the fact in the transcript that was not mentioned in the brief, and the fact in the transcript that was not mentioned in the brief was that the victim testified that she stopped that the defendant, and let me start over again, the victim testified that the defendant stopped when she woke up because something was hurting her. So in other words, she's sleeping, she feels something hurting her, she wakes up, the defendant stops. So in that situation... Well, that's the second incident. That's the second incident, correct? Yes, that's the incident regarding the catheter sexual battery slash attempted sexual battery instruction. Right. Yes. So I just wanted to make that fact clear that perhaps wasn't mentioned in the brief because I thought I was going to argue on that. What you're saying is the jury might not have agreed on penetration, but they could agree on something short of penetration. Yes, exactly. Based on the totality of the circumstances, there is definitely a fair inference to be drawn from the evidence and from the victim's testimony, and from the defendant's own testimony that, you know, whether you believe it or not, that he dropped her and that he accidentally stuck his finger in her genital area and she said, ouch, which kind of ties in with the testimony that she said it hurt. So again, we would suggest that that was sufficient evidence of attempt at penetration if not the completed actor. So that's all I'm going to make on that argument. Do you have the record citation to that portion of the victim's testimony? The record citation, the trial transcript, pages 225 and 227. Okay. Thank you. And then one more thing, hopping back to the first issue again, I apologize. The defendants are arguing that the fourth Red Cox and Calhoun too narrowly, but it's interesting because both of those cases are 4th DCA cases. I mean, I would think that the 4th DCA is entitled to read their own cases and decide how to interpret those cases. So that's one point I would want to make on that. And then, I think that's it. If there are no other questions, the state will rely on the briefs and urge the court to affirm the decision of the district court to deny misbehavior to the defendant. Thank you very much. All right. Thank you very much. Mr. Moss. The fact that a string of courts up until this point has found that there was no Strickland violation in and of itself does not automatically mean that the state court's decisions were entitled to deference. It's certainly a persuasive argument, but . . . I think you're right because if that were the case, then a federal court of appeals could never grant habeas relief in a case where relief had been denied below because by definition, the state courts would have denied relief and the district court would have denied relief. So it's a factor, but it's, at least in my opinion, certainly not dispositive of the AEDPA issue. Correct. And in her observations in response to your hypothetical, Judge Jordan, the state, as I understand it, concedes that under the fact pattern that you described where there were additional indicia of privacy provided by the police to your hypothetical suspect, that there are reasonable expectation of privacy would arguably arise. Does it matter in our case, in Mr. Lumberg's case, that he was under arrest and had been given his Miranda rights at the time that he spoke to the girlfriend? Does that matter in any way, shape, or form? Take away from or is neutral with regards to the privacy interests at issue? Let me make sure I understand your question. In other words, he could have been a person who was brought into the police station for questioning, had not yet been . . . Involuntarily, you mean. Voluntarily or not voluntarily, but at that point he was not under formal arrest. That was the facts in this case, yes. No, he had been arrested. Oh, I thought you meant when he first came to the station. No, no, no. I mean, well, think of a person who at the time of the talk with the girlfriend or spouse or friend is not under arrest, hasn't been given Miranda rights. It seems to me that those two things matter at least some in the privacy calculus. I'm wondering whether the contrary facts in Mr. Lumberg's case create a problem. In other words, a person who's under arrest generally loses some expectations of privacy, especially when he or she has been given Miranda rights. Correct. Had this case been more similar to Boyer, where the detective did not utter the express words of privacy, then this claim would obviously be in a much different posture. Again, it's a matter of factual degree, actually, the extent to which the actions of the police give rise to that subjective expectation in the mind of the defendant. Now, the state has never contested in this case that he had a subjective expectation of privacy under the first prong of Katz. The only issue is whether under the second prong there was a reasonable expectation of privacy. As trial counsel acknowledged during the evidentiary hearing, the general rule is that there is no such right of privacy. The officer had not used the magic word privacy, but he just said, I'd like to leave the two of you alone so that you can talk freely to one another. I'm going to leave and turn off this audio. Those were the facts of the case. Those were the facts of Boyer. Well, but what I'm saying is, but there's no arrest here. I mean, there is an arrest here. Miranda warnings have been given, and the defendant has spoken to the officer notwithstanding that. It does seem to me that here, it's just you're making . . . your whole case seems to be turning on the use of the word privacy, which could be a matter of semantics, really. Well, it's not just the issue of the utterance of the word, but also her utterance that I'm going to turn off the tape recorder, which for a layperson in Mr. Lundberg's position would not necessarily mean that I'm going to give you all privacy subject to ongoing surveillance. Clearly, there was no outward indication of any kind in the interview room once the audio recorder was removed that any subsequent conversations would be subject to monitoring. This wasn't the kind of situation, as you would find, say, in the lobby of a jail, where the visitors are placed on notice to that effect. There was nothing that was visible to that effect here. So given Mr. Lundberg's relative lack of prior history, I mean, there's nothing in the record to indicate that he had ever gone through an interrogation of this type previously. So considering that statement from the standpoint of the listener, that is where the reasonable expectation resulted, especially coming from a sworn law enforcement officer. All right. Thank you very much, Mr. Roberts. Thank you. Happy holidays to all.